UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X
                                  :
GLADSTONE BUSINESS LOAN, LLC,     :
SUCCESSOR-IN-INTEREST TO          :
GLADSTONE CAPITAL CORPORATION     :
                                  :
                    Plaintiff,    :
                                  :        09 Civ. 4225(LMM)
               v.                 :        MEMORANDUM AND ORDER
                                  :
RANDA CORP., ET AL.,              :
                                  :
Defendants.                       :
                                  :
- - - - - - - - - - - - - - - - - X

McKENNA, D.J.

     This action arises from Gladstone Business Loan, LLC

("Gladstone") seeking to recover sums allegedly due under a

Capital Call Agreement between Randa Corp. ("Randa") and

Gladstone.  The Complaint alleges five claims: breach of

contract, breach of the covenant of good faith and fair

dealing, fraudulent-concealment, intentional

misrepresentation, and civil conspiracy.   Claim 1 alleging

breach of contract is brought only against Randa.  (Cmpl.

¶¶ 36-39.)  The remaining claims are alleged against Randa,

Jeffrey O. Spiegel ("Spiegel")[1] and Adnar Finance[2], LLC

("Adnar").  Spiegel and Adnar seek to have the claims

brought against them dismissed pursuant to Fed. R. Civ. P.

_____

[1] Jeffrey Spiegel it is alleged, "directly or indirectly owns and/or
controls Randa, each of the Borrowers . . . and Adnar."  (Cmpl. ¶ 17.)
[2] Adnar Finance is an entity established by Jeffrey Spiegel which
purchased the senior loan which was taken out by Randa Luggage.

1

12(b)(6).  This Court GRANTS the Defendants' motion to
dismiss.  Claims 2, 3, 4, and 5 are DISMISSED as to Spiegel
and Adnar.

## I. Factual and Procedural Background:

On a 12(b)(6) motion for dismissal a court will take
factual allegations in the Complaint as true.  "For
purposes of reviewing the dismissal of a complaint for
failure to state a claim, we accept the complaint's factual
allegations . . . as true."  Roth v. Jennings, 489 F.3d
499, 501 (2d Cir. 2007).  Gladstone is a specialty finance
company that invests in debt securities.  On January 24,
2007, Gladstone and CapitalSource Finance LLC ("CapSource")[3]
agreed to loan money to Randa Luggage, Inc. ("Randa
Luggage").[4]  Randa Luggage was engaged in the manufacture,
distribution, and marketing of luggage, bags, backpacks and
cases.  Adnar Mem. at 3.

CapSource agreed to lend up to $42,625,000 and
Gladstone up to $17,500,000 on a secured basis.  (Cmpl. ¶¶
11, 12.)  CapSource held the senior position and entered
into a subordination agreement with Gladstone.  In April

---

[3] CapitalSource Finance LLC like Gladstone provides commercial lending
services.  (Cmpl. ¶ 12.)
[4] The Complaint's claims against Randa Luggage are brought against the
entities: Randa Luggage, Inc. and Randa Luggage Holdings Corp.   This
Memorandum and Order's reference to Randa Luggage encompasses both of
these entities.

2008, Spiegel created an affiliate company called Adnar.
(Cmpl. ¶ 8.)  Adnar purchased the CapSource Loan on April
29, 2008.  (Cmpl. ¶ 14.)

Galdstone objected to this transaction because the
transaction would have the effect of subordinating
Gladstone's loan below that of a loan owned by an entity
controlled by Spiegel (who is alleged to control Randa
Luggage).  (Cmpl. ¶ 15.)  Spiegel would control both the
debtor (Randa Luggage) and the creditor (Adnar) – sitting
on both sides of the transaction.  Gladstone feared that
the Defendants could use their position to "intentionally
diminish the value of the Borrowers and render Gladstone's
loan position worthless."  Gladstone Mem. at 5.

One June 30, 2008 the parties attempted to resolve the
dispute regarding Adnar's purchase of the CapSource Loan.
Gladstone and Randa entered into a Capital Call Agreement
("Capital Call Agreement").  The Capital Call Agreement
obligated Randa to pay $1,250,000 (the, "Capital Call
Amount") to Randa Luggage if there was a financial covenant
default under the Gladstone Loan.  If however, there was a
monetary default under the Gladstone Loan then the Capital
Call Amount must be paid in cash to Gladstone.  (Cmpl. ¶¶
18, 19.)

In December 2008, Randa Luggage breached the financial
covenants of the Gladstone Loan and triggered a Capital
Call Event.  (Cmpl. ¶ 23.)  In January 2009, the required
principal and interest were not paid on the Gladstone Loan.
The nonpayment triggered a monetary default under the
Gladstone Loan.  On January 27, 2009, Gladstone provided
notice to Randa that a monetary default had been triggered
and Randa was obligated to pay $1,250,000 in cash to
Gladstone.

On February 2, 2009, Randa replied that it did not
have to pay the $1,250,000 to Gladstone because it had
converted "previously advanced loan proceeds that Adnar . .
. was owed under the former CapitalSource Loan that it
purchased."  (Cmpl. ¶ 27.) Randa argued that forgiveness of
a portion of the CapSource Loan which was owned by Adnar
had the effect of fully satisfying Randa's obligations
under the Capital Call Agreement.  (Cmpl. ¶¶ 27, 28.)  On
February 19, 2009, Gladstone rejected Randa's assertion and
argued that the conversion of a previously advanced loan
amount did not constitute a 'cash payment' in accordance
with the Capital Call Agreement.  (Cmpl. ¶ 31.)

Further, Gladstone alleges that even if such
contributions do qualify as 'cash payments' the
contributions were never made by Adnar or Randa in November

4

or December of 2008.   Records of the contributions are the
result of fraudulent and intentional backdating of
accounting records.   "The Borrowers' financial records
reflect that the Borrowers made a fraudulent accounting
book entry purporting to convert $1,250,000 from the
Capital Source loan purchased by Adnar to common equity
with a retroactive backdate of December 2008."   Gladstone
Mem. at 6 (<u>citing</u> Cmpl. ¶ 34.).[5]

On April 29, 2009, Gladstone filed suit in this Court
against Randa Corp., Badanco Acquisition LLC, Randa Luggage
Inc., Randa Luggage Holdings Corp., Jeffrey Spiegel and
Adnar Finance.   Shortly after the filing of the Complaint
Randa Luggage Holdings Corp. and Randa Luggage Inc.
(collectively, "Randa Luggage") filed for protection under
Chapter 11, Title 11 of the United States Code in the
United States Bankruptcy Court for the District of
Delaware.   Accordingly all claims against Randa Luggage
were stayed.   Adnar Mem. at 3.

On June 8, 2009, Spiegel and Adnar moved to dismiss
Claims 2, 3, 4, and 5.   Gladstone voluntary agreed to
dismiss Claim 2 alleging Spiegel and Adnar breached the

---

[5] On a motion to dismiss this court must take all factual allegations in
the Complaint as true.  As such this court assumes that the backdating
of accounting records occurred and no 'conversion of a loan' took place
in November or December.  Randa Luggage thus subsequently had a
monetary default on the Gladstone Loan.  This monetary default required
Randa to pay $1,250,000 'in cash' to Gladstone.

covenant of good faith and fair dealing.  Gladstone Mem at
8.

## II. Standard of Review

     To avoid dismissal of claims under Fed. R. Civ. P.
12(b)(6) Gladstone must plead "a short and plain statement
of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a).  However, adequate
pleadings must raise a right to relief above the
speculative level.  "[A] plaintiff's obligation to provide
the 'grounds' of his entitle[ment] to relief requires more
than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

     The Second Circuit has held, "although 'a court must
accept as true all of the allegations contained in a
complaint,' that 'tenet' 'is inapplicable to legal
conclusions' and '[t]hreadbare recitals of the elements of
a cause of action, supported by mere conclusory statements,
do not suffice.'. . . '[d]etermining whether a complaint
states a plausible claim for relief will . . . be a
context-specific task that requires the reviewing court to
draw on its judicial experience and common sense.'"  Harris
v. Mills,  --- F.3d ----,  No. 07-CV-2283, 2009 WL 1956176

(2d Cir. July 9, 2009) (quoting Ashcroft v. Iqbal, 129

S.Ct. 1937, 1949—50 (2009)).

Claims alleged by Gladstone in the Complaint sound in

fraud (fraudulent misrepresentation, fraudulent concealment

and civil conspiracy).  There is a heightened pleading

requirement when a claim is grounded in fraud.  Fed. R.

Civ. P. 9(b) requires that fraud be pled with

particularity.  Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d

Cir. 1996). "In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated

with particularity. We have explained that in order to

comply with Rule 9(b), 'the complaint must: (1) specify the

statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements

were fraudulent.'" Rombach v. Chang, 355 F.3d 164, 170 (2d

Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d

1170, 1175 (2d Cir. 1993)).  Under Rule 9(b), "[m]alice,

intent, knowledge, and other condition of mind of a person

may be averred generally." Fed. R. Civ. P. 9(b).


## III. Discussion

Spiegel and Adnar move for dismissal of Claims 2, 3,

4, and 5.  Gladstone voluntarily agreed to dismiss Claim 2

against Spiegel and Adnar for breach of the covenant of good faith and fair dealing.  Gladstone Mem. at 7-8.  This Court will examine the surviving claims against Spiegel and Adnar.

**Claim 4 Alleging Intentional Fraudulent Misrepresentation Is Dismissed**

Gladstone alleges the Defendants made numerous false misrepresentations including that a prior Capital Call Event had occurred and Randa had satisfied its obligations under the Capital Call Agreement.  (Complaint ¶ 54.) "Under New York law, for a plaintiff to prevail on a claim of fraud, [one] must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff."  Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997) (citations omitted); Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 400 (2d Cir. 2001).  Defendants argue that Gladstone does not identify the fraudulent misrepresentations, properly allege reliance, or plead damages.  Adnar Mem. at 8.

The Complaint identifies the alleged
misrepresentations with the particularity required by Fed.
R. Civ. P. 9(b).  The Defendants misrepresented that a
'capital contribution' had been made in December 2008 –
when no 'capital contribution' was made at that time.
(Cmpl. ¶ 22.)  Further a letter from Randa signed by
Jeffrey Siegel stated, "in November and December of 2008,
Randa Corp. made cash equity contributions in aggregate
amount of $1,250,000 to the Borrowers."  (Cmpl. Exhibit 5,
Letter of Feb. 2, 2009 ("Feb 2, 2009 Letter").)  Gladstone
alleges the statement in the Feb. 2, 2009 Letter was false.
The alleged misrepresentations are identified with the
particularity required by Fed. R. Civ. P. 9(b).

However, the Complaint is deficient in alleging that
Gladstone relied on any misrepresentations made by the
Defendants.   Under New York Law, a required element of
fraud is that a party must show that it relied on a
misrepresentation and that the reliance is reasonable.  If
the plaintiff "has the means of knowing, by the exercise of
ordinary intelligence, the truth, or the real quality of
the subject of the representation, he must make use of
those mans, or he will not be heard to complain that he was
induced to enter into the transaction by
misrepresentations."  Schlaifer Nance & Co. v. Estate of

Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997) (quoting Mallis

v. Bankers Trust Co., 615 F.2d 68, 80 (2d Cir. 1980)).

Gladstone states it "relied on Randa to comply with

its obligations under the Capital Call Agreement and on the

Borrowers to comply with its obligations under the Credit

Agreement."  (Cmpl. ¶ 58.)  However, this does not

establish that Gladstone relied on the misrepresentation.

Gladstone must show that it relied on the alleged backdated

bookkeeping entries to its detriment.  The opposite appears

to be the case.  In a letter on February 19, 2009,

attorneys for Gladstone reject the assertions that a

'capital contribution' was made.  (Cmpl. Exhibit 6, Letter

of February 19, 2009 ("Feb. 19, 2009 Letter").)  "Suffice

it to say, Gladstone categorically rejects the contentions

raised in your letter.  Randa's reliance on this alleged

earlier equity contribution fails for a number of reasons .

. . ."  (Id.)  The February 19, 2009 Letter goes on to

provide four bases for Gladstone to reject the contention

that Randa had fulfilled its obligations under the Capital

Call Agreement.

A false statement does not create a tort for

fraudulent misrepresentation if it is rejected and does not

induce action.  Schlaifer Nance & Co., 119 F.3d at 98.  In

this case the alleged misrepresentation (that the Capital

Call Amount had been paid) did not induce Gladstone to act to its detriment.

The claim for fraudulent misrepresentation is also deficient because it resulted in a breach of a term of the contract and not an independent harm.  It is well settled that where a claim to recover damages for fraud, "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie."   McKernin v. Fanny Farmer Candy Shops, Inc., 574 N.Y.S.2d 58, 59 (NY 2d. Dep't 1991).  Further, "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations."  Int'l Cabletel Inc. v. Le Groupe Videotron Ltee, 978 F.Supp. 483, 486-87 (S.D.N.Y. 1997) (quoting Rocanova v. Equitable Life Assurance Soc'y, 612 N.Y.S.2d 339 (N.Y. 1994) (quotations and additional citations omitted)).

Here the factual basis of the claim for fraudulent misrepresentation is a fraudulent misrepresentation which breached the terms of the contract.  The misrepresentation does not occur outside of the contract terms or requirements nor does the misrepresentation breach a duty

which existed outside of the duty established by the

contract.  Manning v. Utilities Mutual Ins., Inc., 254 F.3d

387, 400 (2nd Cir. 2001).  "Simply dressing up a breach of

contract claim by further alleging that the promisor had no

intention, at the time of the contract's making, to perform

its obligations therunder, is insufficient to state an

independent tort claim."  Telecom Intern. America, Ltd. v.

AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (quoting

Best Western Int'l v. Crown Sanitation Int'l Corp., No. 04-

CV-0360, 1994 WL 465905, at *4 (S.D.N.Y. August 23, 1994).

Claim 4 alleging fraudulent misrepresentation is dismissed

on the independent bases that Gladstone has failed to

establish reliance and the misrepresentation arose from the

breach of a contract.[6]


**Claim 3 Alleging Fraudulent Concealment Is Dismissed**

    Gladstone alleges that the Defendants fraudulently

modified the Borrowers' financial records to avoid Randa

paying the Capital Call Amount.  (Cmpl. ¶¶ 49, 50.)

Gladstone argues that the modification fraudulently

---

[6] There is a limited exception under New York law when the existence of
a contract itself is in doubt.  In that case a party can bring a claim
for breach of contract and a tort claim in the alternative.  New York
courts allow the Plaintiff to defer making an election at to contract
or tort claims "where there is a dispute over the existence, scope, or
enforceability of the putative contract." Reilly v. Natwest Markets
Group, Inc., 181 F.3d 253, 263 (2d. Cir. 1999).  The existence of the
Capital Call Agreement is not in dispute in this case and the exception
described in Reilly is not available to Gladstone.

concealed Gladstone's breach of the Capital Call Agreement.
Under New York law, in a cause of action for fraudulent
concealment a plaintiff must plead the same five elements
required for fraudulent misrepresentation, plus a duty on
the part of defendant to make disclosure.  City of New York
v. Smokes-Spirits.com, Inc., 541 F.3d 425, 454 (2d Cir.
2008); see also Merrill Lynch & Co. v. Allegheny Energy,
Inc., 500 F.3d 171, 181 (2d Cir. 2007).

The Complaint is deficient in pleading fraudulent
concealment on the same bases as the misrepresentation
claim.   The Complaint fails to allege reliance on the
alleged altered or concealed financial records.  In
addition, the concealment of the status of any payments to
Randa Luggage (by altering financial records) is a breach
of the Capital Call Agreement and not an independent tort.
Accordingly, Gladstone's claim for fraudulent concealment
as to Spiegel and Adnar is dismissed.

**Claim 5 Alleging Civil Conspiracy Is Dismissed**

Gladstone alleges that the Defendants conspired to
defraud them by entering into an "agreement and/or
understanding to manipulate the Borrowers' financial
records to make it appear as if Randa made 'cash equity
contributions.'"  (Cmpl. ¶ 61.)  Under New York Law, "[t]o

establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Pasqualini v. MortgageIT, Inc., No. 05-CV-9714, 2009 WL 2407651, at *15 (S.D.N.Y. August 05, 2009).

A conspiracy claim "'cannot stand alone' and must be dismissed if the underlying independent tort has not been adequately pleaded." Filler v. Hanvit Bank, 156 Fed. Appx. 413, 2005 WL 3270944 (2d Cir. 2005) (citing Romano v. Romano, 2 A.D.3d 430, 432, 767 N.Y.S.2d 841, 842 (2d Dep't 2003); see also Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (failure to state cause of action for torts underlying conspiracy allegations led to dismissal of claim for civil conspiracy). Allegations against Adnar and Spiegel of civil conspiracy are predicated on there being an actionable underlying tort (fraudulent misrepresentation or fraudulent concealment). This Court's dismissal of the above tort claims renders the civil conspiracy claim without an attendant tort. The claim of civil conspiracy to defraud is therefore dismissed.

14

## IV. Conclusion

Defendants' motion to dismiss is GRANTED.  Gladstone is GRANTED leave to replead within 30 days the dismissal of Claims 3, 4, and 5 as to Spiegel and Adnar.

SO ORDERED.

Dated: August *17*, 2009

_____

Lawrence M. McKenna

U.S.D.J.