```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
                                 :
GLADSTONE BUSINESS LOAN, LLC,    :
SUCCESSOR-IN-INTEREST TO         :
GLADSTONE CAPITAL CORPORATION,   :
                                 :
               Plaintiff,        :
                                 :    09 Civ. 4225 (LMM)
          v.                     :    MEMORANDUM AND ORDER
                                 :
RANDA CORP., et al.,             :
                                 :
               Defendants.       :
                                 :
- - - - - - - - - - - - - - - - X
```

McKENNA, D.J.

Plaintiff Gladstone Business Loan, LLC ("Gladstone") filed this action seeking to recover sums allegedly due under a Capital Call Agreement between Gladstone and Defendant Randa Corp. ("Randa"). Gladstone and Randa filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Gladstone's and Randa's motions are denied.

## Background

### A. Statement of Facts

Gladstone and CapitalSource Finance LLC ("CapSource") are specialty finance companies that provide commercial lending services. Randa is a manufacturer, distributor and

marketer of neckwear.  Randa Luggage[1] is an affiliate of Randa that manufactures, distributes, and markets luggage, bags, backpacks and cases.

On January 24, 2007, Randa Luggage entered into a credit agreement with Gladstone (the "Credit Agreement") by which Gladstone agreed to lend up to $17,500,000 to Randa Luggage.  (Gladstone's Rule 56.1 Statement ¶ 1; Randa's Rule 56.1 Counterstatement ¶ 1.)  At the same time, CapSource agreed to lend Randa Luggage up to $42,625,000.  (Id.)  The CapSource loan was senior to the Gladstone loan. (Id.)

In April 2008, Adnar Finance LLC ("Adnar"), an affiliate of Randa, acquired the CapSource loan. (Gladstone's Rule 56.1 Statement ¶ 2; Randa's Rule 56.1 Counterstatement ¶ 2.)  As a result, Adnar stepped into CapSource's shoes as senior lender.

On June 30, 2008, Randa and Gladstone entered the Capital Call Agreement.  (Gladstone's Rule 56.1 Statement ¶¶ 2, 4; Randa's Rule 56.1 Counterstatement ¶¶ 2, 4; Decl. of John Hastings in Supp. of Randa's Mot. for Summ. J., Jun. 29, 2010, ("Hasting Decl.") Ex. C.)  Section 1(a) of the Capital Call Agreement obligated Randa to pay up to

---

[1] This Memorandum and Order's reference to Randa Luggage encompasses Randa Luggage Inc., Randa Luggage Holdings Corp., and Badanco Acquisition, LLC.

2

$1,250,000 (the "Capital Call Amount") to Randa Luggage upon occurrence of a "Capital Call Event," defined as Randa Luggage's failure to comply with Section 4.3 of the Credit Agreement, which set out various financial covenants and financial ratios that Randa Luggage had to comply with each quarter.  (Hasting Decl. Ex. C § 1(a)-(b).)  Under Section 1(a), Randa could pay the Capital Call Amount as either cash equity contributions or subordinated loans.  (Hasting Decl. Ex. C § 1(a).)  If Randa elected the latter, it was required to complete paperwork in the form of exhibits attached to the Capital Call Agreement.  (Id.)  Payment of the Capital Call Amount was due to Randa Luggage no later than five calendar days after Randa received notice that a Capital Call Event had occurred.  (Id.)  If, however, there was an Event of Default under Section 6.1 of the Credit Agreement, defined as Randa's failure to make timely installment or interest payments to Gladstone, at the time a Capital Call Amount was otherwise due, then Section 1(c) of the Capital Call Agreement obligated Randa to pay Gladstone, instead of Randa Luggage, the Capital Call Amount in cash.  (Hasting Decl. Ex. C § 1(c).)

On October 29, 2008, Randa Luggage notified Randa that it had defaulted under Section 4.3 of the Credit Agreement and thus, a Capital Call Event had occurred.  (Gladstone's

3

Rule 56.1 Statement ¶¶ 8-9; Randa's Rule 56.1 Counterstatement ¶¶ 8-9; Decl. of Corey Delaney in Supp. of Gladstone's Mot. for Summ. J., Jun. 30, 2010, ("Delaney Decl.") Ex. 3.)

On October 30, October 31, and November 3, 2008, Randa transferred $1,600,000 to Randa Luggage. (See Hastings Decl. Exs. E, F, & G.) These transfers were recorded by Randa Luggage, Randa, and Adnar on their respective books as advances under Randa Luggage's line of credit with Adnar. (Hastings Decl. ¶ 11.)

On January 16, 2009, Gladstone notified Randa that Randa Luggage had failed to make an interest payment due to Gladstone as of January 1, 2009 and thus, an Event of Default had occurred under Section 6.1 of the Credit Agreement. (Gladstone's Rule 56.1 Statement ¶ 20; Randa's Rule 56.1 Counterstatement ¶ 20; Delaney Decl. Ex. 7.)

On January 26, 2009, Randa made an adjusting journal entry that reclassified $1,250,000 of the money transferred to Randa Luggage in October and November 2008 that was initially recorded as loan advances from Adnar to equity. (Gladstone's Rule 56.1 Statement ¶ 24; Randa's rule 56.1 Counterstatement ¶ 24; Decl. of John Karch in Opp. to Gladstone's Mot. for Summ. J. ("Karch Decl.") Ex. F.)

On January 27, 2009, Gladstone sought payment of $1,250,000 from Randa pursuant to Section 1(c) of the Capital Call Agreement, asserting that an Event of Default under Section 6.1 of the Credit Agreement had occurred while the Capital Call Amount was otherwise due. (Delaney Decl. Ex. 8.) In response, Randa asserted that an Event of Default had not occurred at the time a Capital Call Amount was due because Randa had already satisfied its obligation under Section 1(a) of the Capital Call Agreement by paying the Capital Call Amount in equity to Randa Luggage in October and November 2008. (Delaney Decl. Ex. 9.)

### B. Procedural History

On April 29, 2009, Gladstone filed suit in this Court against Randa Corp., Randa Luggage, Adnar, and Jeffrey O. Spiegel ("Spiegel"), the President of Randa and Adnar. Shortly thereafter, Randa Luggage filed for bankruptcy protection and, accordingly, all claims against Randa Luggage were stayed. Gladstone's claims against Adnar and Spiegel were dismissed by this Court in August 2009. See Gladstone Bus. Loan, LLC v. Randa Corp., 2009 WL 2524608 (S.D.N.Y. Aug. 17, 2009).

On June 30, 2010, Gladstone and Randa filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Gladstone seeks summary

judgment as to its breach of contract claim, arguing that Randa did not make equity contributions or subordinated loans to Randa Luggage during the five day period following notice that a Capital Call Event had occurred and thus, under Section 1(c) of the Capital Call Agreement, a cash payment, which Randa never made, was due to Gladstone in January 2009 after an Event of Default had occurred.  Randa also seeks summary judgment, arguing that Randa complied with Section 1(a) of the Capital Call Agreement when it wired $1,250,000, which was initially recorded as loan advances from Adnar and later reclassified as equity, to Randa Luggage during the five day period following notice that a Capital Call Event had occurred and thus, Randa was not obligated to make any cash payment to Gladstone because Section 1(c) was never triggered.

### Standard of Review

A motion for summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. Id. at 250; see also Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987) ("[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them.")

In an action on a contract, "summary judgment is perforce improper unless the terms of the agreement are wholly unambiguous and no material facts are in dispute". Leberman v. John Blair & Co., 880 F.2d 1555, 1559 (2d Cir. 1989) (quoting Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir. 1985)) (internal quotations omitted). To prevail on a breach of contract claim, a plaintiff must show that (1) a valid contract with defendant existed, (2) plaintiff adequately performed its obligations under the contract, (3) there was a breach by

7

defendant, and (4) plaintiff suffered damages.[2] See R.H. Damon & Co., Inc. v. Softkey Software Products, Inc., 811 F.Supp. 986, 991 (S.D.N.Y. 1993) (citing Nordic Bank PLC v. Trend Group, Ltd., 619 F. Supp. 542, 561 (S.D.N.Y. 1985)). Thus, if there is a genuine issue of fact as to whether the defendant breached the contract, then summary judgment is inappropriate. See, e.g., Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 78-80 (2d Cir. 2002) (holding that a genuine issue of fact as to whether plaintiff was disabled and unable to work as a result of her disability and thus, entitled to benefits under an insurance policy with defendant precluded summary judgment on plaintiff's breach of contract claim); Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank, 819 F.Supp. 1282, 1295 (S.D.N.Y. 1993) (denying motion for summary judgment because there was a triable issue of fact as to whether defendant's actions constituted a breach).

## Discussion

Here, a genuine issue of material fact exists as to whether Randa breached the terms of the Capital Call Agreement. Gladstone and Randa do not dispute that there

---

[2] The Capital Call Agreement provides that New York law applies (see Hastings Decl. Ex. C § 15) and "[a]s a general rule, choice of law provisions . . . are valid and enforceable in [New York]", Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) (quoting Marine Midland Bank, N.A. v. United Missouri Bank, N.A., 643 N.Y.S.2d 528, 530 (N.Y. App. Div. 1996))(internal quotations omitted).

8

was a valid contract -- the Capital Call Agreement -- or that Gladstone satisfied its obligations under that contract. The parties further agree that, pursuant to Section 1(a) of the Capital Call Agreement, Randa had five days to make a cash payment of up to $1,250,000 to Randa Luggage after Randa Luggage notified Randa on October 29, 2008 that a Capital Call Event had occurred. (See Gladstone's Mem. at 1; Randa's Mem. at 5.) The parties disagree, however, about whether Randa made the requisite cash payment as contemplated by the Capital Call Agreement.

Randa argues that the three wire transfers, totaling $1,600,000, that it made to Randa Luggage in the days following notice that a Capital Call Event had occurred satisfied its obligation under Section 1(a) of the Capital Call Agreement. (Randa's Mem. at 10.) Gladstone, however, contends that these transfers did not satisfy Randa's obligation because they were initially recorded and treated as loan advances from Adnar. (Gladstone's Mem. at 6.) Thus, Gladstone argues, Randa was obligated to pay Gladstone $1,250,000, which Randa never paid, under Section 1(b) of the Capital Call Agreement in January 2009 because an Event of Default had occurred while payment under Section 1(a) was otherwise due. (Gladstone's Mem. at 8-9.) The evidence before the Court on whether Randa made the

9

requisite cash payment to Randa Luggage is conflicting and thus, summary judgment is inappropriate.

Gladstone points to evidence, including Randa Luggage's financial documents and testimony of Gladstone and Randa executives, from which a reasonable fact finder could infer that Randa did not satisfy its obligations under Section 1(a) of the Capital Call Agreement and thus, Section 1(c) was triggered.[3]  Gladstone argues that Randa Luggage's October and November Financial Reports, which recorded the wire transfers as loan advances from Adnar, demonstrate that these transfers were not made pursuant to Randa's obligation under Section 1(a) of the Capital Call Agreement.  (Gladstone's Mem. at 8-9; Delaney Exs. 4 & 5.) Additionally, Erika Highland, a Principal at Gladstone, testified that Gladstone was told at board meetings that this money was coming from Adnar, not Randa, consistent with how the transfers had been recorded in Randa Luggage's

---

[3] Gladstone cites to several bankruptcy court decisions to support its arguments.  (Gladstone's Mem. at 9.)  While this Court may find the reasoning applied in Chapter 11 proceedings to be persuasive, it is not controlling here.  Moreover, these cases demonstrate that the inquiry as to whether an action is a debt or equity transaction is fact-intensive, and where there is conflicting evidence, summary judgment is inappropriate. See, e.g., In re Motors Liquidation Co., 430 B.R. 65, 75 (Bankr. S.D.N.Y. 2010) (holding that the secured debt at issue should not be recharacterized as equity based on several factors including that the loan was documented as a loan and had interest terms); In re Gluth Bros. Const., Inc., 424 B.R. 379, 395 (Bankr. N.D.Ill. 2009) (explaining that courts weigh multiple factors in determining whether a debt should be re-characterized as equity capital and that this is "a largely factual determination, and no single factor is controlling or decisive").

Financial Reports. (Gladstone's Am. Reply Mem. at 4 (citing to Highland Dep. 42:15-22).) Highland further stated that interest accrued on the Adnar loan advances during November and December 2008, (Aff. of Erica Highland ¶ 20), and Gladstone argues that these payments further demonstrate that Randa did not make the requisite cash payment (Gladstone's Opp'n Mem. at 4). Gladstone also points to the timing of Randa Luggage's adjusting journal entry, which was made after Gladstone notified Randa on January 16, 2009 that an Event of Default had occurred, triggering Randa's obligation to pay Gladstone under Section 1(b) of the Capital Call Agreement. (Gladstone's Am. Reply Mem. at 5.)

Randa counters with evidence, including declarations of Randa and Randa Luggage executives, from which a reasonable fact finder could infer that the October and November wire transfers did satisfy Randa's obligation under Section 1(a) of the Capital Call Agreement. John Karch, former Vice President of Finance at Randa Luggage, and John Hastings, Executive Vice President and CFO for Randa, stated in their declarations that at a Randa Luggage Board of Directors meeting on October 30, 2008, Randa committed to funding Randa Luggage for the remainder of 2008 consistent with Randa's contractual obligations, and

11

that the recordation of the wire transfers as loan advances from Adnar was not significant because the book entry was at all times subject to year-end adjustments.  (See Decl. of John Hastings in Opp'n to Gladstone's Mot. for Summ. J., July 26, 2010, ("7/29/10 Hastings Decl.") ¶¶ 10-12; Karch Decl. ¶¶ 4-5.)  Karch further attested that knowing the entries were subject to reclassification, he recorded the transfers as advances under the Adnar line of credit pending a determination by Randa as to the proper treatment of the transfers as either subordinate loans or equity. (Karch Decl. ¶ 5.)  Randa also argues that the advances could not have been loan advances because, as Karch stated, after October 29, 2008, Randa Luggage had no right to borrow from Adnar and Randa Luggage never completed borrowing certificates as required under Randa Luggage's loan agreement with Adnar.  (Id.)  Hastings and Karch attested that Randa ultimately decided to treat the transfers as equity, which was reflected in Randa Luggage's January 26, 2009 adjusting journal entry and its December financial report.  (See Hastings Decl. ¶ 11; Karch Decl. ¶ 7.)  Randa's expert, Ronald Weiner, opined that this January 2009 adjusting year-end entry made by Randa and Randa Luggage was made in accordance with generally accepted accounting principles ("GAAP") and that such

12

adjusting entries are common. (Decl. of Ronald Weiner in Opp. to Gladstone's Mot. for Summ. J. ("Weiner Decl.") Ex. A at 3-4.) Gladstone disagrees with Weiner's opinion, asserting that these changes would not be in accordance with GAAP because they would directly contradict the prior financial statements certified as being prepared in accordance with GAAP. (Gladstone's Am. Reply Mem. at 7.)

Randa also argues that, at a minimum, it substantially performed because the initial recordation of the wire transfers is of no pecuniary importance and there is no dispute that Randa Luggage obtained the full benefit of Randa's cash contribution. (Randa's Mem. at 11-12.) The cases cited by Randa to support this argument, however, are distinguishable. For example, in Kennedy v. Auto. Maint. Inc., 384 N.Y.S.2d 921, 923 (N.Y. Dist. Ct. 1975), the court held that a plaintiff should not be denied its right to recover under a warranty agreement because plaintiff's failure to use the forms provided by defendant to verify compliance with the terms of the warranty was an "inconsiderable trifle having no pecuniary importance" and plaintiff offered other evidence demonstrating that he had complied with the warranty's terms.[4]

---

[4] Frank Felix Assocs., LTD. V. Austin Drugs, Inc., 11 F.3d 284 (2d Cir. 1997) is also inapposite. There, the parties had entered a settlement agreement by which plaintiff agreed to drop its claims against

Here, in contrast, the financial impact of Randa's actions is at the center of the parties' dispute. While Randa argues that how the transfers to Randa Luggage were initially recorded is a mere technicality that has no bearing on whether Randa met its obligation under Section 1(a) of the Capital Call Agreement (Randa's Mem. at 11), Gladstone disagrees, asserting that that how the transfers were recorded demonstrates that these transfers were not in fact the requisite cash payment but were instead loan advances from Adnar that Randa later re-characterized as equity in an attempt to "side-step" its failure to meet its obligation under Section 1(a) of the Capital Call Agreement (Gladstone's Opp'n Mem. at 7-8). As discussed above, both parties point to evidence from which a reasonable fact finder could conclude that either party's contention is correct.

In sum, the inquiry as to whether Randa made the cash payment to Randa Luggage as required under Section 1(a) of the Capital Call Agreement turns on credibility determinations, the weighing of evidence, and drawing of legitimate inferences from the facts. See Anderson, 477

---

defendant if defendant paid plaintiff $50,000 and returned a tape drive and a high-speed printer. Frank Felix, 11 F.3d at 286. The court held that defendant's failure to return the tape drive was not a material breach and thus, plaintiff could not sue on its pre-settlement claims but instead would be fully compensated with an award of monetary damages. Id. at 290.

14

U.S. at 255. Here, "reasonable minds could differ as to the import of the evidence" before this Court and thus, summary judgment is inappropriate. <u>Id.</u> at 250.

## Conclusion

For the foregoing reasons, Gladstone's motion for summary judgment is DENIED and Randa's motion for summary judgment is DENIED.

SO ORDERED.

Dated: December 7, 2010

_____

Lawrence M. McKenna

U.S.D.J.